Thomas H. **WASHINGTON, Jr.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 20233.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 16, 1966.

Decided May 16, 1967.

---

---◆---

Mr. John H. Harmon, III, Washington, D. C., for appellant.

Mr. Scott R. Schoenfeld, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., Mr. Frank Q. Nebeker and Mr. Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee. Miss Carol Garfeil, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, DANAHER, Circuit Judge, and COFFIN,* Circuit Judge for the United States Court of Appeals for the First Circuit.

COFFIN, Circuit Judge:

Appellant was convicted by a jury of a rape committed at about two a. m. on August 6, 1965, in Fairlawn Park.

The defense was alibi. Both the victim and her escort identified appellant as the assailant. The issue before the jury, therefore, was the reliability of the identification. That issue turned on the physical conditions at the scene of the crime.

The testimony before the jury was that the part of the park where the attack occurred was not shaded by trees. It also appeared, however, that there were no lights in the park, the only lighting coming from an adjacent street. The jury retired to deliberate on these facts and after about an hour and a half were excused until the next morning. When they returned to resume their deliberations they sent the following message to the court:

> "Most persons on the jury are not familiar with the area where the crime was committed. Would it be possible to visit the exact site of the crime *under similar lighting conditions* as the time of the crime and also to obtain a report on the weather on the night of the crime? *There are questions regarding the lighting conditions in the area.*" (Emphasis added.)

The court rejected the first part of the jury's request because there could be no assurance that "the conditions are the same today as they were on August 6, 1965."

As for the second part of the request, the court obtained from the Weather Bureau the following report:

> "The weather conditions between 12:00 a. m. and 3:00 a. m. on August 6, 1965, were as follows: The weather at that time was clear. The temperature was in the low 70's, and the visibility was eight miles."

When the court informed both counsel that he proposed to read this report to the jury, defense counsel stated:

> "I object to the last sentence. My objection is to the wording: 'Visibility eight miles.' I do not think it is an appropriate part of the weather report."

Notwithstanding defense counsel's objection, the court read the weather report to the jury and then added: "I assume that means eight miles clear visibility."

* Sitting by designation pursuant to Section 291(a) Title 28 U.S.Code.

The jury then retired and, in scarcely more time than was required to take a ballot and fill out the verdict form, returned with the guilty verdict. We reverse.

■ It is clear from the jury's message that the question looming was whether the prosecution witnesses could have seen the rapist clearly enough to make their identification reliable in the face of the defendant's alibi evidence. We may assume, without deciding, that the weather report would have been admissible during trial as relevant to that issue.[1] Nevertheless, without meaning to endorse an "ironbound, copper-fastened, double-riveted" rule of proscription, Henry v. United States, 6 Cir., 1953, 204 F.2d 817, 820, we think that the circumstances here show too great a danger that the evidence gave undue emphasis to facts that should have been considered, if at all, only in context. *See* United States v. Bayer, 1947, 331 U.S. 532, 538, 67 S.Ct. 1394, 91 L.Ed. 1654.

We have searched without avail to find a comparable precedent. There have been cases of eleventh-hour admission by consent and even of evidential afterthoughts by way of completing the formal record. But here the issue on which the jury expressed some degree of doubt went to the very heart of the case— whether the defendant was the rapist whom the witnesses saw. The doubt was apparently resolved solely by consideration of evidence that, even if wholly accurate, gave only a general and peripheral description of the lighting conditions in Fairlawn Park, and gave that under circumstances making it likely that it would be taken as conclusive as to those conditions. The probability that this happened was enhanced by the judge's interpretive comment, which, if it had any meaning to the jury, meant something more than that the weather was clear, for that had already been noticed.

The defendant had no practical opportunity to refute the implications of the report or to set it in perspective. If the report had been part of the government's case in chief, the defendant might well have attempted to show special conditions, such as localized smog, ground fog, a new moon, or the presence of vagrant clouds, to indicate that clear weather and eight miles' visibility did not assure good lighting in the park. Or he might have tried to minimize the report's significance by exploring the generality of the Weather Bureau's terms.[2] With the jury already out, such tactics were effectively precluded.

■ Of course, we cannot know the thought processes of the jury. It is pos-

---

1. In view of the ground of our decision here, we express no opinion on the difficult questions whether a weather report may properly be admissible unless authenticated, *see* 28 U.S.C. § 1732 (1964); Fed.R.Crim.P. 27, and whether the defendant might have been permitted to offer evidence to show that the report was inaccurate. *See generally* 9 Wigmore, Evidence §§ 2565–67 (1940); Morgan, *Judicial Notice*, 57 Harv.L.Rev. 269 (1944).

2. For example, night-time "visibility" is defined as "the greatest distance at which * * * unfocused lights of moderate intensity (approximately 25 cp.) can be seen and identified * * *." U.S. Weather Bureau, Manual of Surface Observations circ. N, ¶ 2010 (7th ed. 1966). And the Bureau distinguishes between "prevailing visibility": "the greatest visibility which is attained or surpassed throughout at least half of the horizon circle not necessarily continuous", *Id.* ¶ 2100, and "sector visibility": "the visibility within a specified sector of the horizon circle having essentially uniform visibility", *Id.* ¶ 2200. It would require relatively little forensic ability to argue effectively that the weather report was wholly inconclusive as to the possibility of seeing a non-luminous object in a particular part of the District at two in the morning.

sible that they considered the weather report in perspective and gave it minimal weight. If the report had been introduced among the other evidence during trial, we should not hesitate to assume that they did. But in the circumstances of this case it is too possible that they regarded the report as resolving some reasonable doubt as to the reliability of the identification. Therefore, since we cannot say that the verdict was not produced by the error, we must reverse the conviction and remand the case for a new trial.

Reversed and remanded for new trial.