**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gene BATES, Defendant-Appellant.**

**No. 16386.**

United States Court of Appeals Seventh Circuit.

Feb. 5, 1969.

---

Sec. 371. Counts 2 through 6 charged substantive violations of Title 18 U.S. C.A. Sec. 2312, by various defendants during 1964. Counts 7 through 10 charged similar violations during 1965. Bates on the substantive counts was charged and found guilty only on Counts 7, 8 and 10 (all alleging 1965 violations), with the interstate transportation of two Chevrolets and a Pontiac. Some of the defendants were convicted, others acquitted (including Bates), on the conspiracy count. Some were convicted, others acquitted, on substantive counts in which Bates was not named.

The trial was lengthy and, as might be expected with so many defendants and charges, including conspiracy, it would be extremely difficult to pinpoint the evidence relevant to the counts on which Bates was convicted. In view of the conclusion we have reached, there is no reason to do so. It is sufficient in this respect to state that we are satisfied that the evidence presented a submissible issue as to Bates and that absent prejudicial error it supports the finding of guilt.

Of the issues urged here as grounds for reversal, only two need be considered: (1) Was it prejudicial for the Court to send to the jury during the course of its deliberation a stipulation entered into by the parties at the commencement of the trial? and (2) Did the Court commit prejudicial error in giving to the jury during the course of its deliberation a supplemental instruction referred to by the government as an Allen-type charge?

Terence MacCarthy, Director, Federal Defender Program, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Michael B. Nash, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before MAJOR, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

MAJOR, Senior Circuit Judge.

Defendant Bates appeals from a judgment of conviction based on Counts 7, 8 and 10 of a ten-count indictment, all of which related in some way to the transportation of stolen automobiles. Count 1 charged Bates, five named defendants and two persons not named with conspiring to transport in interstate commerce and dispose of stolen motor vehicles, in violation of Title 18 U.S.C.A.

The stipulation reads as follows:

"It is hereby stipulated and agreed by, among, and between the United States of America, by EDWARD V. HANRAHAN, United States Attorney for the Northern District of Illinois, and PASQUALE ACCETTURA, also known as TONY GRECO, individually and by his attorney, Richard Caifano; GENE BATES, individually and by his attorney, Daniel Becco; and ROBERT KEY, individually and by his attor-

neys, Harvey J. Powers, Donald Ross, Robert Bailey and Richard LeFevour, that the following persons if called upon to testify, would testify * * *." Then follow the names of eight persons, together with the testimony which they would give concerning numerous automobiles described in the different counts of the indictment. The only part of the stipulation relevant to the issue under discussion is that which pertains to Dr. John G. Anagnos, which states:

"1. That, on July 19, 1965, he was the owner of a 1964 Oldsmobile two-door automobile, vehicle identification number 884M256512;

2. That, on July 19, 1965, at approximately 9:30 p. m., he parked this automobile in front of 7944 S. Wolcott Street, Chicago, Illinois;

3. That, on July 20, 1965, at approximately 8:30 a. m., he returned to the location where he had parked his automobile and found it to be missing;

4. That he had given no one permission to drive or otherwise move said automobile."

The jury received the case at 4 p. m. on Tuesday, April 4, 1967, and returned its verdict at 11:45 a. m. the following day. Defendant cites numerous instances in which the jury made requests of the Court, but we need be concerned here only with the two matters which give rise to the contested issues as above set forth. At about 10 p. m. on the first day of the jury's deliberation and just prior to excusing the jury for the night, the Court without request from either party and over defendant's objection gave the supplemental charge, subsequently discussed. The jury reconvened the following morning at 9 a. m., and at 11 a. m. requested the Court to permit it to examine the stipulation entered into at the beginning of the trial. On defendant's objection to giving the stipulation to the jury, there was a colloquy between counsel and the Court as to its propriety. The Court overruled defendant's objection and permitted the jury to have the stipulation.

At 11:45 a. m., the jury's verdict was returned.

The colloquy clearly reveals the mistaken notion which the able trial judge had as to the purport of the stipulation. Defendant in objecting stated, "It is just as if the jury had not recalled the testimony of a particular witness, and the Court requested the court reporter to prepare a transcript and send it in to the jury. This is extremely prejudicial, and I don't think it is proper." The Court responded, "Of course, it would be objectionable to have a portion of the transcript of one witness on one subject which was testified to by other witnesses and which is the subject of dispute. This is not the subject of dispute. This is stipulated, undisputed evidence. * * * I said they can accept these facts as true and correct because they have been stipulated to. * * * They don't have to weigh the testimony or compare it against other testimony to decide whether or not they believe it. This is undisputed testimony."

Thus, the Court permitted the jury to have the stipulation on the misconceived premise that it contained a recitation of undisputed facts when it clearly shows that it was only a recitation of statements to which each person would testify if called as a witness. This latter view was recognized by the Court at the beginning of the trial when the stipulation was read to the jury by the attorney for the government. At that time the Court stated, "All right. Ladies and gentlemen of the jury, you can assume that each of those witnesses, if he had been called, would testify as indicated with respect to his car and its disappearance on the dates indicated."

In any event, we think permitting the jury to read the stipulation during its deliberations, after it had heard it read during the trial, gave it undue emphasis and was error. Henry v. United States, 6 Cir., 204 F.2d 817, 821. Whether the error was prejudicial to defendant Bates is another matter. The stipulation previously set forth stated that Dr. Anagnos would testify, if called as a witness, that

he parked his 1964 Oldsmobile at 7944 South Wolcott Street, Chicago, at 9:30 p. m. on July 19, 1965. Defendant testified that he saw the same automobile at 7:30 p. m. and again at 9:30 p. m. on the same evening outside the motel in Hickory Hills, Illinois. (The Oldsmobile was described in Count 9 of the indictment, in which Bates was not charged.)

The government's effort to justify the Court's action regarding the stipulation is not convincing. On brief it quotes from our decision in Chicago & N. W. Ry. Co. v. Froehling Supply Co., 179 F.2d 133, 135, as follows:

"A stipulation by a party as to the facts in a case must be regarded as evidence of the facts as to which the stipulation was made."

This statement misses the point because, as we have shown, there was no stipulation as to facts but only as to what the witness would testify if present.

The government states that the Court has wide discretion in sending documentary evidence to the jury during its deliberation. The cases cited are not relevant because this was not documentary evidence. The stipulation was not admitted as an exhibit, not even marked as such. The government proceeds, "The fact that there was a conflict between Bates and Dr. Anagnos as to the location of the car at a particular time is completely irrelevant to defendant Bates. He was not charged with Count IX, the count involving Dr. Anagnos' Oldsmobile. The location of that car at 7:30 or 9:30 would neither help Bates' defense nor aid the prosecution." Pursuing this argument the government states, " * * * the jury had already heard the stipulation and its description. The presence of the stipulation in the jury room did not add any significant modicum of reinforcement to the information already before the jury."

The government's argument on its face bears some plausibility but we think it will not stand close analysis. True, the conflict between the stipulated testimony of Dr. Anagnos and Bates directly related only to the Oldsmobile which was mentioned in Count 9, wherein Bates was not a defendant. Even so, such conflict had a direct bearing upon Bates' credibility, which was important in view of the fact that his main defense was that he had no knowledge that the cars named in the counts on which he was convicted were stolen.

The importance which the government attached to the conflict is shown by its vigorous cross-examination of Bates, which concluded:

"Q. Mr. Bates, I now show you the stipulation of testimony that was read on the opening day of this trial. I ask you if your signature appears on the back of that.

A. Yes, sir.

Q. Since you are here and since you read this prior to signing it, I presume you recall the stipulated testimony of Dr. John G. Anagnos, on July 19, 1965 he was the owner of a 1964 Oldsmobile 2-door automobile, Serial No. 884M-256512?

A. Yes, sir.

Q. That on July 19, 1965 at approximately 9:30 p. m., he parked this automobile in front of 7944 South Wolcott Street, Chicago, Illinois. That on July 20, 1965 at approximately 8:30 a. m. he returned to the location where he parked his automobile and found it to be missing, and that he had given no one permission to drive or otherwise remove said automobile, is that correct?

A. That's right.

Q. Possibly you can explain to me then, Mr. Bates, how you could have seen that Oldsmobile when it wasn't even stolen until 9:30 that evening?

A. I think this man is mistaken on his dates.

Q. It is stipulated testimony, isn't it?

A. It is, but anyone can be mistaken."

With the conflict between Bates and Dr. Anagnos thus emphasized, it is not

unreasonable to believe that the jury regarded it as affecting Bates' credibility and that the stipulation was utilized to resolve any doubt on this score against him. This view is strengthened by the fact that the jury returned a verdict finding Bates guilty within a few minutes after the Court permitted it to have the stipulation.

We hold that sending the stipulation to the jury during its deliberation was error, and we cannot escape the conclusion that it might have worked to the detriment of the defendant. In United States v. Grady, 185 F.2d 273, 275, this Court stated:

"And it is sufficient to require a reversal if, in our judgment, the error might have operated to the substantial injury of the defendant."

To the same effect see United States v. Dressler, 7 Cir., 112 F.2d 972, 978; Henry v. United States, 204 F.2d 817, 821; Washington v. United States, 126 U.S. App.D.C. 389, 379 F.2d 166, 168; McCandless et al. v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 80 L.Ed. 1205.

This brings us to the second contested issue arising from defendant's contention that the Court committed reversible error in giving to the jury during its deliberation a so-called Allen type of instruction. As already noted, this charge was given at about 10 p. m. on the first day of the jury's deliberation and prior to excusing the jury for the night. At that time the case had been in the hands of the jury for about six hours, and the charge was given on the Court's own volition. We think it pertinent to set forth the charge in its entirety:

(1) "Obviously, you have some disagreements. This means that all of you have the duty to re-examine your own position in the light of the testimony as you have heard it, listen carefully to the analysis of other members, whatever position they may have, and as objectively and as impartially and as fairly as you can, attempt to serve as judges, which is your responsibility in this case.

(2) "I do not want to imply for a second that I expect anybody to abandon a position or a conclusion which he or she has arrived at objectively and fairly and which he or she, therefore, conscientiously believes to be the right position, but I want you to start over again fresh in the morning and re-examine the evidence with respect to each of the defendants, and on that basis, then, evaluate, in the light of my instructions, what your verdict shall be.

(3) "There is a duty which you have sworn to carry out, to be as objective as possible, to listen to the analysis of other members of the jury, and to attempt, on the basis thereof, to re-examine your own analysis to see whether you are satisfied as to its ultimate correctness.

(4) "You twelve people are representative jurors. There is no reason to believe that twelve other people selected in the same fashion as you were would be any more likely to be able to analyze the evidence carefully and fairly and impartially, no more likely than you are. That is the duty which you have to do.

(5) "I repeat that I do not expect anybody to abandon a position which he or she has arrived at through the process I have just described, and I expect all of you to re-examine your own positions in the light of the discussion and the analysis of other members of the jury and see whether or not you cannot come to a unanimous conclusion with respect to each of the defendants.

(6) "Let me say one thing further to you. I know you are tired at this point and you are entitled to be. I am tired. I think everybody in the courtroom is tired.

(7) "I hope that in the light of a good night's sleep and in the day, whatever emotions have been stirred, whatever rigidity has developed in your discussions, will disappear and you will, with fresh minds re-examine the evi-

dence and see whether you cannot arrive at unanimous conclusions with respect thereto."

(Paragraph numbers supplied.)

Defendant objected to the charge on the ground that it amounted to an Allen charge, which was not appropriate under the circumstances. The Court overruled the objection and in so doing stated:

"Quite the contrary, I will not permit you to say that what I said was an Allen charge, because it was not the Allen charge. It is very carefully distinguished from the Allen charge, and I suggest that you go back and read the Allen charge."

The government on brief here seeks to justify the charge solely on the basis that it was an "Allen Type Instruction." (Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L.Ed. 528.) Thus, we have the anomalous situation of the trial court expressly denying that the instruction was an Allen charge, and the government arguing that it was.

Scores of cases are called to our attention wherein the Allen charge, even with some variation, has been approved, and some where the charge has been condemned as being beyond the limit set forth by the Supreme Court in Allen. No case has been called to our attention, however, where a charge such as that under discussion has been approved.

Of the numerous cases relied upon by the government wherein courts have approved instructions encompassing those approved by the Supreme Court in Allen, consideration of a few of the more pertinent will suffice. Cited are Hyde v. United States, 225 U.S. 347, 382, 32 S.Ct. 793, 56 L.Ed. 1114, and three decisions of this Court, United States v. Di Pietto, 396 F.2d 283; United States v. White, 382 F.2d 445, and United States v. Furlong, 194 F.2d 1. The instruction before the Court in Hyde, 225 U.S. page 382, 32 S.Ct. page 807, bears no resemblance to that given in the instant case. It stated:

" 'The court thereupon instructed the jury to retire for further deliberation, and make another effort to agree upon a verdict, charging them, however, that should they render a verdict, it must be one to which they all freely agreed; that the law would not recognize a coerced verdict or one which was not the free expression of the views and opinions of the jurymen, and that if, after another conscientious effort, the jury still fail to agree, they should return to the court and so state. That it was not the purpose of the court to unduly prolong their deliberations, and that if they could not conscientiously and freely agree upon a verdict, they would be discharged.' "

In sustaining the propriety of this instruction the Supreme Court stated (page 383, 32 S.Ct. page 808):

"The court took care to say to the jury that the law would not recognize a coerced verdict, and that it was not the court's intention to unduly prolong their deliberations, and if, after another effort, 'they could not conscientiously and freely agree upon a verdict, they would be discharged.' It is hard to believe that with that admonition yet in their ears they bartered their convictions, with that promise expressly made to them, they were coerced by a threat of confinement to acquit those who they were convinced were guilty, or convict those who they were convinced were innocent."

In Di Pietto, the Court during the jury's deliberation repeated to it an instruction which it had previously given in its general charge, and added (396 F. 2d page 287):

" 'The Court, by repeating this last instruction, does not intend nor mean to convey the impression that the jury must reach a decision in this case. You are at liberty not to do so if, after further discussion, any differences of opinion heretofore expressed cannot conscientiously be reconciled one way or the other.' "

This Court sustained the government's contention that the instruction was not coercive.

The instruction in White followed closely the Allen charge, with the additional statement (382 F.2d page 447), "If you should fail to agree on a verdict the case must be retried." The only objection made to the instruction was to the statement just quoted. This Court held that the inclusion of the statement did not constitute prejudicial error. However, one Judge dissented, expressing the view that the statement was improper and misleading but not sufficiently prejudicial to require reversal.

In Furlong, as the Court pointed out (194 F.2d page 3), the instruction complained of was in the language approved by the Court in Allen, with the addition of the statement, "With that admonition you are directed to continue your deliberations until you arrive at a unanimous verdict." We denied defendant's contention and held that it was not coercive. Our decision, however, was based in part upon the ground that no appropriate objection was made in the trial court and that it could not be raised for the first time on appeal.

Another case relied upon by the government, illustrative of the wide disparity between an approved instruction and that here under consideration, is the decision of the Second Circuit in United States v. Kahaner, 317 F.2d 459. In that case the trial court read to the jury from the Supreme Court's opinion in Allen. Defendant's counsel objected and moved for a mistrial, whereupon the Judge recalled the jury (page 483) "and again emphasized, in a variety of ways, that 'if any individual juror still retains a conscientious view that differs from that of other jurors, * * * you are not to yield your judgment'; 'you are not to yield your judgment simply because you may be outnumbered or outweighed,' * * *."

We have read and re-read the charge under consideration and are forced to the conclusion that it is a wide departure from Allen or any approved variation thereof. After it had deliberated the case for six hours, the jury was told not once but five times (paragraphs 1, 2, 3, 5 and 7) to re-examine the evidence or its position for the purpose twice-told (paragraphs 5 and 7) of reaching a unanimous conclusion. True, the jury was twice told (paragraphs 2 and 5) not to abandon a position or conclusion conscientiously reached, but in each instance and in the same sentence was contradictorily told to re-examine the situation. As pointed out, this was for the purpose of arriving at a unanimous conclusion. The instruction, particularly to minority jurors, was in the nature of a plea that they abandon their position and join the majority for the sake of a unanimous conclusion.

The court desires to express its appreciation to Honorable Terence F. Mac-Carthy, court-appointed counsel, for his valuable service in presenting this appeal on behalf of appellant.

It follows from what we have said that the judgment appealed from is reversed and the cause remanded.

KILEY and FAIRCHILD, Circuit Judges (concurring).

We concur in reversal and in the conclusions ably stated by Senior Circuit Judge Major with respect to the error of sending the stipulation to the jury room. We respectfully disagree that the Judge's supplementary charge to the jury exceeded the bounds which have been approved in previous cases. We do think, however, that it is appropriate to state that although supplementary charges which make a suggestion that jurors re-examine their positions have usually been held not to be coercive and reversible error, such charges often present a close question and district judges would be well advised to be most sparing and cautious in using them.