WM. HUFFMAN *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—306.]

**Hearsay Evidence.**

    Where in a homicide case the evidence tends to show that the defendant did the killing in self-defense, a statement of defendant's wife to a witness to the effect that the witness should go away, that the appellant had gone after his pistol, made a moment before the killing, which took place in the highway just outside of the house, and

the wife's statement was not made in the presence or hearing of either the deceased or defendant, such a statement is hearsay and not admissible.

### Instruction as to Cause of Death.

In the trial of a homicide case where the evidence shows that the death took place nearly three months after the shooting and that the shot struck only the deceased's arm it is reversible error for the court to refuse to instruct the jury that before the jury can convict the defendant of the killing they must believe from the evidence beyond a reasonable doubt that defendant not only shot the deceased unlawfully but that said shot was the proximate cause of the death.

APPEAL FROM MERCER CIRCUIT COURT.

October 16, 1884.

OPINION BY JUDGE LEWIS:

The only witness in the trial of this case present when the homicide was committed with which appellant is charged was Donovan.

According to his testimony the shooting took place at the residence of appellant between sundown and dark. Both the deceased and appellant were and had been all the evening drinking whiskey gotten at appellant's house. A short while before the shooting they were talking otgether, both sitting on the same bed. The witness asked the deceased to go home, who said he would do so directly and did get up and go out of the house into the big road as if to go home. The appellant went out of the room into another room and witness went to the room door and asked the wife of the appellant for a bottle of whiskey. Appellant, according to witness' statement, being in that room at the time. In reply she told witness to go away, that appellant was gone after his pistol. Witness immediately ran out of the house and around a wagon and heard a pistol shot by the part of the porch. The deceased then said, "Bill, you have shot me," to which appellant answered, "that was what I aimed to do." The witness further testifies that he heard no angry words between the parties previous to the shooting.

One of the grounds for reversal is that the court permitted the witness to state what the wife of appellant said to witness when he went to the door of the room and asked for a bottle of whiskey.

It is clear that if only testimony of this witness was considered it would be difficult to perceive how the evidence objected to could

have prejudiced appellant for with or without the statement of appellant's wife the shooting was done not in the necessary self defense of appellant.

But the other witnesses who were about one hundred yards off when the shooting occurred and who ran to the place and arrived there very soon after, testify to statements made by appellant in presence of the deceased and not denied by him which conduce to show that appellant shot in self defense.

These two witnesses testify that when they arrived at the place where the shooting took place appellant was on the inside of the door leaning against the door facing and deceased was on the porch cursing him; that appellant told him to go away, he did not want to hurt him, and also said he was obliged to shoot or be killed or murdered in his own house.

These witnesses testify to previous insulting conduct and language, on the part of the deceased during the day towards appellant, his wife and mother. That when urged to leave he refused to go and said he would stay and sleep with appellant's wife as he had done before, and also threatened to take appellant's life. When the whole evidence is considered there is enough to raise a question whether the shooting was done in self defense or not. And as the declaration made to the witness Donovan had a direct bearing on that question and if true strongly tended to show that the shooting was done by appellant deliberately and after preparation and not in his necessary self defense it was material, and must have had an influence upon the jury. It is therefore proper to determine whether it was properly admitted by the lower court.

The witness testifies that Mrs. Huffman spoke in an ordinary tone of voice and he does not know whether appellant heard her or not. To make the evidence competent in any aspect it should be made to appear that appellant did hear it. Not only is there a failure to show he heard it, but the idea conveyed by the language used is that he did not hear it, for he was not then present in the room as he "was gone after his pistol." But whether he heard it or not we are of the opinion it was hearsay and incompetent, the wife who made it not being shown to have instigated the shooting or being in any way connected with it. And what she said being at most but the mere expression of her opinion, or surmise, with perhaps no sufficient basis for it. *Bradshaw v. Commonwealth,* 10 Bush (Ky.) 576.

The following instruction was given: "Before the jury can convict defendant of any offense they must believe from the evidence beyond a reasonable doubt that defendant not only shot the deceased unlawfully but that said shot was the cause of the death of said Wm. Wickersham." Counsel for appellant asked the court to insert in the instruction the word "proximate" before the word "cause" but the court refused to do so and gave the instruction quoted, the only one bearing on that point.

The wound was inflicted November 24, 1877, and Wickersham died February 21, 1878. The injury was to the arm, the bone being broken. But it was not necessarily or probably a fatal wound. The only witness who testifies in relation to the character of the wound was a physician, who gave it as his opinion that the wound caused the death of Wickersham. The physician first called to see him was not a witness, but the one who did testify saw him the first time November 27, 1877, again December 14, 1877, and the last time January 27, 1878, nearly one month before death occurred.

He testifies that Wickersham had pneumonia, and that his system was in such a condition from dissipation as to militate against the healing of the wound.

According to the ruling of this court in the case of *Bush v. Commonwealth,* 78 Kentucky, 268, the court erred in refusing to give the instruction in the form asked by appellant's counsel.

It follows therefore that the court should also have given an instruction applying to a case of shooting and wounding denounced by section 2, article 6, chapter 29, or section 1, article 17, chapter 29, General Statutes.

For the errors indicated the judgment is *reversed* and cause remanded.

*Bell & Wilson,* for appellant.