## Martin v. Commonwealth.

(Decided December 8, 1911.)

### Appeal from Grant Circuit Court.

1. Criminal Law—Indictment.—Where an indictment is headed "Grant Circuit Court, June Term, 1911," and recites that the grand jury of Grant county charged that the appellant did, "in the county and circuit aforesaid," commit the offense for which he is tried, the indictment sufficiently describes the county in which the offense is charged to have been committed.

2. Criminal Law—Discretion of the Judge on the Trial.—The control of the case upon the trial rests largely in the wise discretion of the trial judge; and, in the exercise of that discretion, he may, after the evidence has been closed, admit further evidence upon a material question in the case.

3. Criminal Law—Discretion of the Judge on the Trial.—Where the principal prosecuting witness testified to a material fact, concerning which he had not been contradicted by any witness before the close of the testimony, the circuit judge should have permitted the defendant to re-open the case and proffer testimony upon that point; and his failure to do so is a reversible error.

WILLIAM CARNES for appellant.

JAMES BREATHITT, Attorney General and THEODORE B. BLAKEY, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant was indicted by the Grant County grand jury for the crime of breaking and entering a railroad depot at Corinth, Kentucky, and taking $8 from the money drawer therein. Upon the trial he was found guilty, and sentenced to serve a term in the penitentiary for a period of from two to ten years. To reverse that judgment he prosecutes this appeal.

1. It is first contended that the demurrer should have been sustained to the indictment, because it did not specifically charge that the depot alleged to have been entered, was in Grant County.

The indictment is headed "Grant Circuit Court, June Term, 1911," and recites that the grand jury of Grant County proceeds in the name of and by the authority of the Commonwealth of Kentucky, and charges, in apt language, the appellant with the crime above described, by alleging that the said Vernie Martin, "in the county and circuit aforesaid," did commit the offense which is then

specifically set forth. Although the indictment does not, in express words, allege that the depot was located in Grant County, it, nevertheless, laid the venue of the indictment in the Circuit Court of Grant County; and, in subsequently alleging, specifically, that the act was committed "in the county and circuit aforesaid," we think it was sufficiently specific to inform the accused of the location of the depot which he is charged with entering. The question, however, is not an open one, since this precise question was decided adversely to appellant's contention in Armstrong v. Commonwealth, 16 Ky. Law Rep., 495, 29 S. W., 342.

2. The depot at Corinth lies between the railroad track and the turnpike, and is divided into three rooms or apartments; the waiting room being in the north end, the freight room in the south end, and the ticket office between the two. The ticket office has doors entering into the freight room and into the waiting room, while both the waiting room and the freight office have outside doors opening on the east side of those rooms, next to the railroad track. The ticket office has the usual window at which tickets are sold, with a cash drawer immediately below it, on the inside. About noon on the day of the theft, True, the ticket and station agent, pulled down and latched the ticket window, locked the door of the office, and started up town for his dinner. After going a short distance, he returned to the depot and went into the freight office. He had been there only a few minutes, when he heard a noise or crash in the ticket office; and, upon opening the door that led from the office to the freight room, he saw some one withdrawing his head from the ticket window, although he could not recognize the person. True immediately went to the sliding door of the freight room, which was closed, and looked through a crack to see who would come out of the waiting room. He testified that he saw the appellant come out of the waiting room and go up the street, and that he immediately went into the waiting room to see if any other person was there, and found no one there. The ticket window and the cash drawer immediately below it, had both been broken open, and the money taken. He followed appellant up town, and immediately had a warrant issued for his arrest. Upon the trial, True testified to the foregoing facts, and after all the evidence had been heard, and both sides had announced they had no more testimony

to offer, the judge adjourned the court until the next morning. When court convened the next day, the appellant offered to introduce Leslie Wood and Kelly Lee, stating that they would testify that the crack in the freight room door was not located in such a way, and was not of such a size, that a person standing in that room could see a person leaving the door of the waiting room. The Commonwealth objected to the reopening of the case, because it had been closed the day before, and the witnesses had been discharged and had gone home; and that, if the court should re-open the case, it would require further proof on the part of the Commonwealth, which it was not then prepared to furnish. The court sustained the objection, and refused to re-open the case, or admit this evidence. The purpose of this testimony was to contradict True, the chief prosecuting witness.

Evidently, the controlling reason of the circuit judge in refusing to open the case was, that it would result in a continuance, by reason of the fact that the depot in question was located in the town of Corinth, which was in a different section of the county from Williamstown, the county seat, where the case was on trial.

The door to the freight room was of the rolling variety, and so made as not to fit tightly against the side of the opening. The width of the crack has been put at an inch and a half by Wood and Lee and at five inches by True; and while True says that he saw appellant when he left the waiting room, Wood and Lee offered to testify that a person standing in the freight room, and looking through the crack of the door, could not see a person when he came out of said door.

It is apparent, therefore, that appellant was convicted chiefly upon the testimony of True; and, if Wood and Lee had been permitted to testify, they would have contradicted True in a very material respect. Furthermore, the proposed evidence would not have been merely cumulative, since there was no other testimony which tended to contradict True, upon this point. True's testimony was controlling, and went uncontradicted. Without his testimony the appellant could not have been convicted. It was, therefore, vital to the defendant that he should overcome True's testimony, if it could be done. He proposed to do this by Wood and Lee, but was not allowed to do so, because the case had been closed, the day before.

It was held in Jackson v. Commonwealth, 23 Ky. Law Rep., 1114, that the action of the court in declining to open the case and permit the new testimony, is reviewable.

It is well settled that the control of the case upon the trial rests largely in the wise discretion of the trial judge; and many cases are found in the books which sustain the trial judge in admitting testimony after the case has been closed, for the purpose of promoting full justice to all parties concerned. In Burk v. Commonwealth, 5 J. J. M., 675, the jury had returned to the court room with a verdict declaring the defendant not guilty of the offense of conducting a gaming house, because, as they said, the house had not been identified. But, after this statement had been made, and before the verdict had been read, the judge called a witness who identified the house, whereupon the jury changed its verdict and found the defendant guilty. Upon appeal this court sustained the act of the circuit judge, and held that he had not abused the discretion which the law gives him. That discretion, however, is to be exercised wisely under the facts of each particular case, and for the purpose of promoting justice. Vicaro v. Commonwealth, 5 Dana, 504; Ellison v. Commonwealth, 6 Ky. Law Rep., 306; Walker v. Commonwealth, 7 Ky. Law Rep., 46; Commonwealth v. Green, 10 Ky. Law Rep., 749; and Barclay v. Commonwealth, 116 Ky., 275. Whenever it appears that the action of the trial judge has prejudiced the substantial rights of the defendant, it will be treated as a reversible error.

Under the facts of this case, we are of opinion that the court should have permitted Wood and Lee to testify, since their testimony related to, and would have contradicted, the most important testimony offered by the Commonwealth.

For this reason the judgment is reversed, and the case remanded for a new trial.