# Burchfield v. Commonwealth.

March 13, 1945.

Edward L. Allen for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Jake Burchfield shot and killed Bill Miller with a pistol between 8 and 9 o'clock on the evening of September 24, 1943. He was found guilty and his punishment fixed at 21 years in prison.

Complaint is directed (1) to the contents and manner of admission of a dying declaration; (2) the giving of an instruction on the reckless handling of the pistol; (3) the court's refusal to admit surrebuttal testimony; (4) the admission of evidence as to a poker game and certain remarks attributed to Burchfield; and (5) the refusal of the court to set aside the swearing of the jury because of certain remarks made by employed counsel for the Commonwealth in his closing argument to the jury.

We will dispose of the last ground urged for reversal at the outset, because no reference was made to it in the motion and grounds for a new trial. As said in Anderson v. Commonwealth, 288 Ky. 576, 156 S. W. 2d 860, no rule is more firmly established in the judicial procedure of this state than the one which forbids this Court to consider on appeal matters occurring at the trial before the verdict which were not set out in the motion and grounds for a new trial.

Burchfield and Miller were miners and both lived at Glo, in Floyd County. There was no evidence showing there had been hard feelings between them before the killing. It seems to have been the custom for a good many miners to gather in a cow pasture between Glo

and the nearby town of Estill on Sundays, at which time a good deal of card playing and drinking went on. Miller and a brother of Burchfield had been playing cards during the afternoon. There was testimony also showing that the appellant had been playing. During the day his brother pawned a 45 pistol to him and the testimony for the Commonwealth shows that he was flourishing it and that he fired it twice during the afternoon. A Commonwealth witness said also that Burchfield said he was the meanest man on the place.

Complaint is directed to the evidence showing what the appellant had said and done during the afternoon on the ground it was too remote from the time of the killing, namely 8:00 or 9:00 p. m., and that it had no connection with the offense with which he was charged. We are of a different view, however, because we think this evidence tends to show the state of mind and general attitude of the appellant. This view is strengthened by the further statement attributed to him after he and Miller left the cow pasture and went in the direction of Estill to the effect that Miller had beat him out of $10.

While the appellant, Miller and Johnny Wells, the principal witness for the Commonwealth, were in Estill, Miller got some whiskey. Burchfield said he took one drink of it. It was upon the return of the trio from Estill that the shooting took place. Wells said that, as they were returning from Estill, the appellant told Miller that he stole $10 from him and that he was going to kill him; after they crossed the wire fence Burchfield ran ahead of the party about 30 feet and called to him to join him which he did over Miller's protest; and as to the shooting he said:

"A. I walked on up to him and Bill Miller followed me up there and I was on one side—I don't know which side I was on—and Bill Miller was on the other side and Bill made a step like he was coming toward him, about a half of a step and Jake had this gun in his left hand and he said: 'God damn you, don't you come another step, I'll kill you,' and Bill made a turn to go back down and Jake shot him, and when Bill fell I started to go down to him and Jake said: 'Johnnie, don't you do that, God damn it.' " Wells said also that Miller was unarmed; was not advancing toward Burchfield at the time of the shooting; and was only about six feet from him when the shot was fired. The bullet

entered Miller's left side and passed through his body. Several witnesses for the Commonwealth, who came upon the scene immediately after the shot was fired, said that, in answer to Burchfield's statements to the effect he and Miller were scuffling over the gun and that it went off accidentally, Miller said it did not happen that way. Miller was taken to the hospital and died two days later.

The testimony relating to the dying declaration was given by Miller's daughter. She was not examined out of the presence of the jury before the statement was admitted. She said that, while in the hospital, her father told her: "Your Daddy is going to die. You have always been a good girl, and I want you to promise me you will always be a good girl." After saying again her father told her he was going to die, she said that he gave her the following version of the shooting:

"A. He said him and Johnny Wells went to Estill and were coming back around the cow pasture and Jake said: 'I am going to kill you, you son-of-a-bitch', and Daddy said: 'No, I haven't done anything to you', and he said: 'Yeah, I am going to kill you', and Daddy said: 'Here, take a drink of liquor', and Daddy said then he shot him and snapped at Johnny Wells and Johnny Wells went running to get some man and then I went out of the room, I didn't want to listen to him."

Burchfield said that as he was getting through the fence the pistol dropped on the ground and he picked it up and was carrying it in his left hand as he and Miller were going around the path; he was walking to the right of Miller; the latter asked him to let him have the gun so he could shoot under Wells' feet; when he refused to let him have it Miller jerked him around and made a dive for the gun with his left hand and when he grabbed it it went off accidentally; Miller said, "I am shot smack through"; and when he said, "I hate this, Bill," Miller replied, "Yeah, but it can't be helped." Testimony was offered for the appellant showing that Johnny Wells had a bad reputation for truth and veracity, and that shortly after the shooting he was heard to say, "I don't know whether he is dead or not—when I left there his head was on one side of the road and his body on the other." Albert Green testified that he lived about 100 or 150 yards from the scene of the difficulty, and that while he was looking out an upstairs

window he saw Miller and Burchfield, and the former suddenly grabbed Burchfield's gun and while they were scuffling it went off. The Commonwealth offered two witnesses in rebuttal, who said they heard Green say he was down in his garden when the shooting occurred. One of these witnesses said also that it would have been impossible for Green to have seen the shooting in the daytime, because of two trees and a slate dump which were between his home and the scene of the shooting.

The morning after the case was closed counsel for the appellant sought to reopen it for the purpose of introducing three witnesses, who, according to his avowal, would have testified that immediately after court adjourned on the preceding day they went to the home of Albert Green and stood by the side of the house next to Beaver Creek, and from there they could see the place on the pathway where Miller was shot. The avowal for the Commonwealth shows that upon adjournment on the preceding day both sides announced "Closed", and all witnesses were excused; that Albert Green had testified to the same facts on a previous trial; and that the parties who went to the Green home had testified in Burchfield's behalf on both trials.

The third ground upon which reversal is urged relates to the court's refusal to admit the evidence offered in surrebuttal. A trial court has a wide discretion as to the admission of testimony after the evidence has been closed, and that discretion will not be interfered with unless it is abused. Counsel for Burchfield states in his brief that the witnesses who were not permitted to testify in surrebuttal went to the same window from which Green said he saw the conflict and would have testified that it was easy to see the place from that point. We have noted, however, that the avowal shows that they went to the side of the house. Their testimony would not have supported that of Green. However, it would have tended to contradict that of the Commonwealth's witness who said that the place of the difficulty could not be seen from Green's home because of the two trees and the slate pile. We are not prepared to say, when we consider the character of the evidence offered in surrebuttal, and the circumstances relating to the conduct of the trial, that the trial court abused his discretion in ruling as he did.

Likewise, we deem the second complaint to be with-

out merit. There was testimony showing that Burchfield had handled the gun in a careless and reckless manner, and that he was carrying it in his hand. It seems to us there would be more basis for saying the instruction was favorable rather than prejudicial to Burchfield.

The principal ground urged for reversal relates to the contents and manner in which the dying declaration was admitted. The witness who testified concerning this statement was not first examined out of the presence of the jury with the view of determining the competency of the evidence. As pointed out in Whitehead v. Commonwealth, 200 Ky. 440, 255 S. W. 93, it is a safer and better practice to conduct a preliminary hearing as to the competency of the dying declaration out of the presence of the jury, but it will not be held to be reversible error if the hearing is properly conducted and the court permits only competent evidence to be given. The appellant contends that incompetent evidence was admitted in the statement because Miller was said to have told his daughter that he and Burchfield left the cow pasture and went toward Estill late in the afternoon. Even if it be conceded that this statement was not a part of the res gestae, it could in no manner have been prejudicial because Burchfield himself made the same statement. To be competent dying declarations must be made when the maker believes death is impending, and he has given up all hope of life. Miller said he was going to die, and he knew the seriousness of his wound because he told Burchfield he was shot "smack through." That his wound was serious can not be questioned, because the large caliber bullet passed completely through his body, and he did die within two days after he was wounded. Under the circumstances, we think the statement was competent, and we fail to see how it can be contended seriously that the essential facts therein were not a part of the res gestae.

Since we find no error prejudicial to the appellant's substantial rights, the judgment is affirmed.