### HENRY v. UNITED STATES.
### No. 11742.

United States Court of Appeals
Sixth Circuit.

June 3, 1953.

John Y. Brown, Lexington, Ky. (Arthur B. Rouse, Jr., and Harry Miller, Jr., Lexington, Ky., on the brief), for appellants.

Claude P. Stephens, Lexington, Ky. (Claude P. Stephens, U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The points on appeal in this criminal case made by both appellants, Willis Clay Henry and Oliver Franklin Henry, have been duly considered with the result that only one assignment of error is deemed to present a serious issue. We think that no reversible error was committed by the district court in the admission of evidence or in overruling appellants' respective motions for directed verdicts; that the verdict of the jury was not contrary to the law and the evidence; and that no reversible error inheres in the refusal of the trial court to grant the special requests tendered by appellants in relation to what constitutes doing business as wholesale liquor dealers.

The district judge, in our view, instructed the jury accurately and adequately —indeed, favorably to defendants—in defining the essential elements required to be proved to constitute appellants wholesale liquor dealers within the meaning of the applicable federal statutes. The jury was charged: "It is important for you to know, in the first place, what constitutes a wholesale dealer, because each of these counts of this Indictment, after all, is in dispute only as far as I recall it, upon the question of whether they were engaged as wholesalers. So, it is important for you to know what is meant by a wholesaler, a man engaged in the wholesale liquor business. That has been very clearly defined by the Statute. Ordinarily we would say that anybody is engaged in the wholesale liquor business who sells it to somebody for the purpose of reselling. Well, the law of the United States in connection with this matter defines it more specifically and eliminates the question of having to find out what somebody is going to do with it, with the whiskey: 'Every person', says the Statute of the United States, 'who sells or offers for sale foreign or domestic distilled spirits or malt liquors in quantities of five wine-gallons or more, to the same person at the same time, shall be regarded as a wholesale dealer in liquor.' Now, I think it is fair to say that what we are dealing with is a wholesale dealer, a person who engages in the business of dealing in liquor as a wholesaler; and that statute defines a wholesale dealer. In order to meet the requirement of being a wholesale dealer, there must be circumstances from which there can be implied or inferred an element of continuity in carrying on the business. A mere single, disconnected act not indicating a consecutive line of procedure would hardly meet

the requirement of dealing as a wholesaler. It means conducting, prosecuting and continuing in business by performing progressively the selling of whiskey in amounts of five gallons or more to the same person at the same time. That is necessary to convey the idea of carrying on a business; not a mere inadvertent, accidental, unintentional purpose to do it." See Supreme Malt Products Co. v. United States, 1 Cir., 153 F.2d 5; and Heath v. United States, 10 Cir., 169 F.2d 1007.

Appellant Oliver Henry was held guilty and sentenced by the court on only one count, namely Number Five of the indictment, four counts against him having been dismissed on motion of the United States Attorney before the trial and two counts, Three and Seven, upon which he was found guilty, having been dismissed after the trial upon the ground of his former jeopardy. On Count One (the conspiracy count), the jury found all three defendants not guilty. Count Five charged that, between July 1, 1950, and March 1, 1952, in violation of Section 2857, I. R. C., 26 U.S.C.A. § 2857, defendants engaged in business as wholesale liquor dealers and offered for sale distilled spirits in quantities of five wine-gallons or more to the same person at the same time, but failed to keep a record on Forms 52-A and 52-B as prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury of the United States.

Appellant Willis Henry was convicted, not only on the Fifth Count, but also on the Third, charging violation of Section 2831, I.R.C, 26 U.S.C.A. § 2831, and on the Seventh Count, charging violation of the section of the federal statutes requiring the issuance of a basic permit to wholesalers under the Federal Alcohol Administration Act, Title 27 U.S.C.A. §§ 201–211. The third defendant, Edward Cecil Henry, was found not guilty on all eight counts.

The assignment which presents, in our judgment, the real issue on this appeal is the charge of appellants that the district court committed reversible error in permitting the entire testimony of two Government witnesses to be presented to the jury for the second time, by letting the court reporter play back this testimony on his recording machine after the case had been submitted to the jury and the foreman had reported that the jurors were unable to reach a verdict on any of the counts.

The incident of which appellants complain occurred after the case had been submitted to the jurors and after they had deliberated for an hour and twenty minutes, when, at five minutes to five o'clock in the afternoon, the foreman reported that the jury was unable to reach a verdict on any of the four counts. Commenting upon the short time the jury had deliberated, the United States District Judge pointed out that the cases were of serious consequence, both to the Government and to the defendants, and that if there were any chance of reaching a verdict the jury would be permitted to come back for further deliberation on the ensuing day. The judge then asked: "What do you think about it, Mr. Foreman?" The foreman replied that he had a lot of work to do. The judge admonished him that his present jury service was very important work and that the question was not whether he wanted to come back on the following day, but whether consultation and consideration by the jury might result in a verdict on "some of the counts." His Honor then questioned all the jurors as to whether any of them thought further consideration and effort to reconcile whatever differences existed between them would enable the jurors to reach a verdict.

"Would it be possible to have some of this evidence given over to us?" one of the jurors asked. "I would think so," the judge responded. "It is all recorded here." The juror stated: "Some of us seem to be somewhat confused as to some of the testimony of some of the witnesses. * * * Several of them seem to be a little bit confused as to the number of gallons that were sold at various times and whether the witness admitted that he bought it." The judge asserted that he would be glad "to have that read to you by the reporter, or he can play it off the machine." The record reveals, from the reporter's notes, that the defendants excepted to the ruling of the

court that the testimony of certain witnesses designated by the jurors might be played back to them.

Court was then recessed until the following morning when the judge explained to the jury that although it was somewhat irregular to attempt to remedy, by going over the evidence again, the difficulty of agreement by the jurors upon their recollection of certain testimony given by certain witnesses for the reason that "it is not always possible to reenact before the jury the hearing of the testimony," he had decided, nevertheless, in the exercise of his discretion, to comply with the wish of the jurors to hear played back the mechanical recording of the testimony of any witness concerning which there had been a dispute. To be helpful to the jury, the judge then outlined several topics concerning which certain of the witnesses had testified. Whereupon, it was ascertained that the jury desired to have re-read the testimony of the witnesses Willard Moore and Albert Halsey. The court reporter then played back on his recording machine the entire testimony of these two witnesses.

Moore's testimony was to the effect that he had bought at appellants' store five cases of whiskey on one occasion.

Halsey testified that he and his wife together had bought from Oliver Henry nine gallons of whiskey and about fifteen cases of beer on a certain occasion. Later on in his testimony, he said that he paid for one half of the whiskey and beer and his wife paid for the other half. He then went on to testify favorably to the defendants in evident contradiction of a prior statement he had made to Alcohol Tax Unit Investigators.

During the examination of Halsey, the attorney for the defendants objected to a leading question asked the witness by the United States Attorney. The judge stated that a witness who is hesitant about telling the facts has to be led. Addressing the recalcitrant witness, the Court said: "Now, let me tell you something; I have listened to your hesitant answers to these questions long enough. I want you to tell the facts from now on. You have been dodging around—." "I am a-telling them," asserted Halsey. "Oh, you are telling that you and your wife were there buying whiskey. Do you think anybody is going to believe that? You were the one that was buying the whiskey and you are the one that was hauling the whiskey into Wolfe County, is that right?" the judge asked. "Well, sometimes it was right and sometimes it wasn't," responded the witness. "Where were you hauling this whiskey?" His Honor inquired. The witness replied that he was taking it to Campton in Wolfe County. The judge then asked the witness if he had been convicted of bootlegging in that county. The witness admitted that he had been. "A dry county?" queried the judge. "And I drank it myself," the witness stated. "Well, you didn't drink any five gallons, did you?" the judge asked. "Now, we have had enough of your hesitancy about telling the facts here. I am going to send you to jail if you don't answer these questions and answer them candidly and frankly. Now, tell us what was going on there." After two more inconsequential questions by the United States Attorney, the direct examination was concluded. The cross-examination was unimportant.

There is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations. Considerable latitude in discretion is vested in the trial judge in this respect. See, for example, Jianole v. United States, 8 Cir., 299 F. 496, 500, in which, however, though the principle was recognized, the evidence introduced was held to have been wholly incompetent. See also: Burk v. Commonwealth, 28 Ky. 675; Martin v. Commonwealth, 145 Ky. 752, 141 S.W. 54; Burchfield v. Commonwealth, 299 Ky. 549, 186 S. W.2d 412; People v. Ferrone, 204 N.Y. 551, 98 N.E. 8; Garner v. State, 97 Ark. 63, 132 S.W. 1010.

In practice generally, where evidence is permitted to be introduced after the jurors have entered upon their deliberations, the admission is by consent of the parties or in relation to some non-controverted matter essential to a complete record. After the jury has reported its inabili-

ty to agree upon a verdict, it is, in our opinion, incumbent upon the trial judge to exercise extreme care in reopening the case for the introduction of further testimony or in permitting any evidence to be restated or re-read to the jurors. Unless restraint is exercised by the judge, it may well be that he would permit undue emphasis to be placed upon portions of the testimony, if such portions were called for by the jurors.

In the instant case, this thought is of particular force for the reason that the testimony of the witness Halsey, when read back to the jury, repeated the above-described comments of the district judge which plainly indicated his opinion that Halsey was swearing falsely. It would seem quite likely that the emphasis thereby placed upon the judge's comments could have been the controlling factor in bringing about the agreement of the jury upon a verdict finding the defendants guilty after it had originally reported its inability to agree.

We do not intimate that the action of the able, experienced and fair-minded district judge in the case at bar even remotely approached the highly erroneous and prejudicial action of the trial judge in Quercia v. United States, 289 U.S. 466, 470, 53 S. Ct. 698, 699, 77 L.Ed. 1321; but we do think that, in permitting his critical colloquy with the witness Halsey to be re-read and thereby emphasized to the jury, he inadvertently overlooked the admonition of Chief Justice Hughes that the "influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'"

In Nigro v. United States, 8 Cir., 4 F.2d 781, 785, it was held an erroneous action on the part of a judge to ask the jury, after it had reported its failure to agree upon a verdict, whether there was a predominance one way or the other and the foreman replied there was. See also Stewart v. United States, 8 Cir., 300 F. 769, 782–785; Burton v. United States, 196 U.S. 283, 305–307, 25 S.Ct. 243, 49 L.Ed. 482. These authorities illustrate the caution which should be exercised by a trial judge in dealing with requests of jurors after they have retired to consider their verdict and especially after, following some deliberation, they have reported, their inability to agree. In Little v. United States, 10 Cir., 73 F.2d 861, 867, 96 A.L.R. 889, it was held reversible error to permit a stenographer to read the charge of the court to the jury in the jury room in the absence of the defendant and his attorney, where the record failed affirmatively to disclose that no prejudice resulted. This case is plainly differentiable from that at bar, but the opinion is authority for the proposition that "emphasis plays an important role in transmission of ideas by word of mouth"; and that admonition by the judge "to avoid any emphasis is no assurance that there was none."

 In view of the emphasis placed upon the falsity of Halsey's testimony, by permitting the mechanical record of it which embraced the trial judge's strong castigation of him to be read to the jury, we have reached the conclusion that the judgments of conviction and sentence should be reversed.

Accordingly, the case is remanded for a new trial of both defendants.