798 F.2d 1417
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shafik YONO, Defendant-Appellant.
 No. 85-1389.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1986.
 
 Before LIVELY, Chief Judge, and MERRITT and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 "Prosecutorial misconduct" and the trial court's handling of jury requests for the rereading of testimony form the substance of defendant Yono's appeal from his conviction of conspiracy to distribute heroin. We find no misconduct and no reversible error.
 
 
 2
 At the center of the alleged conspiracy ring was a heroin supplier named Zacaria Chahine, one of three other defendants tried with Mr. Yono. Chahine fled to Lebanon during the trial and was found guilty in absentia. Mr. Yono's other co-defendants were acquitted.
 
 
 3
 Among those to whom Chahine was said to supply heroin was one Kassen Makki. Makki utilized couriers to deliver the heroin to his customers, and a nephew of Makki's, Tahssen Bazzi, was such a courier. It was Bazzi's testimony that tied defendant Yono to the conspiracy. Bazzi, who had been granted immunity and had been admitted to the federal witness protection program, testified that Yono made numerous heroin purchases, ranging in amount from one to nine ounces, at prices of up to $32,000. Yono became Makki's main customer, according to Bazzi's lengthy testimony.
 
 
 4
 During opening statements, counsel for one of Mr. Yono's co-defendants had told the jury that the government would present testimony from witnesses who had been paid by the government and whose families the government had moved. In her direct examination of the witness Bazzi, the prosecutor brought out that Bazzi was a participant in the government's "witness protection program," a term that was not defined. There was an objection after the witness had said he was a participant in the program; the objection was overruled, and the prosecutor went on to elicit information on the amount of living expenses Bazzi received from the government for himself and his family.
 
 
 5
 Mr. Yono took the stand in his own defense and denied any involvement in the drug conspiracy. He admitted to some contact with Bazzi --including having lent him substantial sums of money even though they were barely acquainted and Mr. Yono's income was modest --but he maintained that their dealings were entirely legitimate.
 
 
 6
 Two incidents occurred in the cross-examination of Mr. Yono that are claimed to have made Mr. Bazzi's "witness protection program" testimony more damaging than it might have been otherwise. Asked if he did not have "a CCW [carrying concealed weapons] permit," Mr. Yono said he did. This exchange then occurred:
 
 
 7
 "Q: And that's a current permit?
 
 
 8
 A: No, ma'am, it's expired.
 
 
 9
 Q: You allowed it to expire?
 
 
 10
 A: I had no choice, because it was --the gun was taken from me when they raided my house and I have no choice. I didn't want it to expire, but I had no choice.
 
 
 11
 Q: Is it in fact true that the license expired in 1981 but you kept the weapon?
 
 
 12
 A: No, ma'am."
 
 The other exchange was this:
 
 13
 " Q: Okay. Sir, you were nationalized in 1974?
 
 
 14
 A: Yes, ma'am.
 
 
 15
 Q: Are you a Caldean?
 
 
 16
 A: Yes, ma'am.
 
 
 17
 Q: What does that mean?
 
 
 18
 A: Caldean, we came from Caledonia, that's years back, that's all I am. Caldean means another one, Catholic, that's the only two.
 
 
 19
 Q: Catholic rather than Muslim?
 
 
 20
 A: That's right.
 
 
 21
 Q: Tahssen Bazzi is a Muslim, isn't he?
 
 
 22
 A: Exactly. Exactly right. That's what he said."
 
 
 23
 There was no objection to any of these questions.
 
 
 24
 During the course of her final argument to the jury, the prosecutor referred to testimony the government had elicited from participants in the conspiracy, including Tahssen Bazzi, and said:
 
 
 25
 " So look at the evidence, recall the testimony, think of the demeanor of those witnesses. They were telling the truth, to the best of their ability when they were up on that stand."
 
 
 26
 Counsel interposed an objection, saying "she can't vouch for the credibility of the witnesses," and the court responded that assuming she couldn't, she wasn't.
 
 
 27
 Counsel for defendant Yono did not move for an acquittal, and the case was submitted to the jury under instructions to which no exception is taken here.
 
 
 28
 After the jury had retired, it sent the court a note expressing a desire to see the exhibits and transcripts of the testimony of four witnesses, including witness Bazzi and defendant Yono. The exhibits were provided, but the court explained to the jury foreman that the court reporter had not transcribed the testimony, that it would take at least three or four days to get a transcript, and that it would be very time consuming to have the court reporter read the testimony from her notes. The court suggested that the jurors should "rely on your collective memories for the testimony." Counsel took no exception to this handling of the jury's request. Thereafter, the jury sent the court a note asking for a 42-page statement that witness Bazzi had given the government. That request was denied, with the agreement of counsel, because the statement had never been offered or received in evidence.
 
 
 29
 The jury subsequently sent the court a third note, asking to hear "Tahssen Bazzi's testimony as it relates to Shafik Yono and Rafik Hamka [one of the co-defendants who was ultimately acquitted.]" In a colloquy between court and counsel outside the presence of the jury, Mr. Yono's attorney and the attorney for the other defendant both asked that the testimony be read, and the prosecutor joined in that request. Because Mr. Bazzi's testimony had taken two and a half days, however, the court summoned the foreman of the jury, reminded her of the length of the testimony, and said "I want to be sure that the jury has truly exhausted their memories." The following exchange then occurred:
 
 
 30
 "THE FOREMAN: We only asked for a certain portion of that.
 
 
 31
 THE COURT: The difficulty is, if I read any part of it, I have to read all of it.
 
 
 32
 THE FOREMAN: We were not aware of that.
 
 
 33
 THE COURT: I can't isolate testimony. I have got to read all of it, both direct and cross.
 
 
 34
 THE FOREMAN: I win go back and discuss it."
 
 
 35
 After the foreman had returned to the jury room, the court received a final note from the jury. It read as follows:
 
 
 36
 "There are certain areas of Tahssen Bazzi's testimony the jury is unable to reconstruct. To be fair to the defendants, the jury still wishes Bazzi's testimony."
 
 
 37
 In the ensuing discussion between court and counsel, conducted out of the presence of the jury, Mr. Yono's counsel stated once more that he would have no objection to the Bazzi testimony being read back to the jury in whole or in part. After counsel for one of the other defendants objected to any reading of the testimony relating to his client, however, Yono's lawyer changed his mind. Asked what prejudice would result from a reading of the testimony, in view of the jury's statement that it was unable to reconstruct it, one of the defense counsel responded "some seem to have forgotten it. I want to take advantage of [their having forgotten] it." When Mr. Yono's counsel was asked if he would just as soon the jury forget it as well, he said "all you are going to do is focus and highlight it," and he requested that the jury be given an opportunity to hear the testimony of all four of the individuals whose testimony had been requested originally, including that of defendant Yono. Responding "they may very well be able to reconstruct that," the court decided to have the Bazzi testimony read in its entirety (including cross examination) without the testimony of the witnesses for whose testimony the request had not been repeated. Counsel stipulated, after the reading of a portion of the Bazzi testimony that contained what the jury wanted to hear, that it would not be necessary to read the rest.
 
 
 38
 The jury ultimately found Mr. Yono guilty of the conspiracy with which he had been charged, the court adjudged him guilty, and he was sentenced to five years imprisonment and a $10,000 fine.
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 Mr. Yono contends, on appeal, that it was an abuse of discretion for the trial court to accede to the jury's request for a reading of witness Bazzi's testimony without also having Mr. Yono's testimony read back. We disagree. The jury repeatedly evidenced its inability to reconstruct the Bazzi testimony, which included reference to a number of individuals with Middle-Eastern names, but there is no reason to suppose that the jury was never able to reconstruct the exculpatory testimony of Mr. Yono.
 
 
 42
 The situation with which the trial court was presented is similar to that involved in United States v. Loyd, 743 F.2d 1555 (1lth Cir. 1984), where the jury also made a series of requests to have oral evidence repeated. The court finally granted a request for the testimony of three witnesses, but denied a request of the defendants to have testimony impeaching those witnesses read to the jury. In holding that the trial court did not abuse its discretion, the Court of Appeals noted that if the district court has broad discretion in responding to a jury request for reading of portions of the trial testimony," and it noted further that [t]he defendants have not pointed to any specific prejudice to them that occurred because of the reading of this testimony." 743 F.2d at 1567. Defendant Yono, similarly, has pointed to no "specific prejudice" here, and we do not believe that the trial court abused its "broad discretion" in finally allowing the jury to rehear critically important testimony that it evidently had not been able to reconstruct despite repeated instructions to try to do so.
 
 
 43
 In Henry v. United States, 204 F.2d 817, 820 (6th Cir. 1953), this court noted that considerable latitude in discretion is vested in the trial judge" in respect of the admission of evidence after the jury has entered upon its deliberations. A rereading of testimony in that case was held to have been improper, but one of the reasons for this holding was that the material read back to the jury contained "comments of the district judge which plainly indicated his opinion that [the witness) was swearing falsely." 204 F.2d at 821. "It would seem quite likely," this court went on to say, "that the emphasis thereby placed upon the judge's comments could have been the controlling factor in bringing about the agreement of the jury upon a verdict finding the defendants guilty after it had originally reported its inability to agree." Id. The situation in our case is not comparable.
 
 
 44
 * * *
 
 
 45
 * * *
 
 
 46
 The trial court did not err in overruling the objection --not interposed until after the witness had already replied --to questions about witness Bazzi's participation in the government's witness protection program.
 
 
 47
 In opening argument defense counsel had told the jury that it would hear from witnesses who had been paid by the government and whose families had been moved by the government. It was not inappropriate for the prosecutor to bring out that Mr. Bazzi was such a witness. Information that the witness is being paid and protected by the federal government "simultaneously enhances and undermines (his] credibility," as this court pointed out in United States v. Adamo, 742 F.2d 927, 944 (6th Cir. 1984), cert. denied, U.S., 105 S.Ct. 971 (1985). In that case the prosecutor had told the jury on opening statement that a certain witness had lied to a grand jury "because she was frightened," and the federal government had "spent a good deal of money to relocate, support and protect" (this witness and two others.]" Id. We stated there, and we reiterate here, that "we disapprove of reference by the government's attorney to a witness being protected in a case where it is not obvious, relevant, nor made an issue by defense counsel." 742 F.2d at 945. In the present case, however, the witness protection program had been made an issue by defense counsel, and the questioning placed far more emphasis on the witness's receipt of money from the government --a circumstance tending to detract from his credibility --than on his having been found to need government "protection," a circumstance that might have worked to the disadvantage of the defendants had the jury realized that the protection involved anything more than the payment of money. It might have been preferable for the prosecutor to use the technically incorrect term "witness relocation program," which avoids the possible negative implications of "protection," but in the context of this case we find no prejudice in the prosecutor's use of the technically correct term.
 
 
 48
 The reference to the witness protection program was not rendered unacceptable when, more than 800 pages later in the trial transcript, defendant Yono was questioned about his possession of a weapon after the expiration of his CCW permit. We see no real likelihood that any juror would have tied this questioning to the fact that another witness was a participant in the witness protection program, and the absence of any evident connection may explain why there was no objection to the questioning.
 
 
 49
 Lack of prejudice may also explain the failure of Mr. Yono's attorney to object to the question about Yono's religion. We fail to see how Mr. Yono could be harmed by the jury's knowing that he was a Catholic while his accuser was a Muslim. Rule 52(b), Fed. R. Crim. P., says that "[p]lain errors ... affecting substantial rights may be noticed although they were not brought to the attention of the court," but we find no such "plain errors" in the transcript of this trial.
 
 
 50
 Neither do we find that the prosecutor improperly vouched for the truthfulness of the government's witnesses by inviting the jury to consider their demeanor on the stand and to conclude that they were telling the truth to the best of their ability. This did not exceed the limits of acceptable argument.
 
 
 51
 Mr. Yono contends, finally, that the evidence presented at trial was insufficient to establish his guilt. Mr. Yono did not move for a judgment of acquittal, however, and the sufficiency argument thus was not preserved for appeal. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, U.S., 105 S.Ct. 213 (1984), There can be no doubt of Mr. Yono's guilt if witness Bazzi was telling the truth, moreover, and Bazzi's truthfulness was a question for the jury, not for the courts.
 
 
 52
 The judgment is AFFIRMED.