NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0291n.06

No. 08-2081

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 12, 2010**
LEONARD GREEN, Clerk

KENNETH EID,                                           )
                                                       )
    Plaintiff-Appellant,                              )
                                                       )
v.                                                     )     On Appeal from the United States
                                                       )     District Court for the Eastern
SAINT-GOBAIN ABRASIVES, INCORPORATED,                  )     District of Michigan
                                                       )
    Defendant-Appellee.                               )


Before:       BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

        BOGGS, Circuit Judge.  Kenneth Eid (Eid) brought this employment discrimination action against Saint-Gobain Abrasives, Inc. (Saint-Gobain), alleging that Saint-Gobain terminated him because of his race, ethnicity, or national origin.  Prior to trial, the district court granted Saint-Gobain's motion in limine to exclude certain attorney correspondence as settlement communications pursuant to Federal Rule of Evidence 408.  The district court then held a jury trial, which lasted eleven days.  After trial, upon the jury's request, the district court ordered portions of two witnesses' testimony re-read to the jury.  The jury thereafter returned a verdict in favor of Saint-Gobain.  Eid now appeals that jury verdict, claiming that the district court committed reversible error when it (1) excluded the attorney correspondence under Federal Rule of Evidence 408, (2) failed to give the jury a cautionary instruction regarding the proper use of the re-read testimony, and (3) refused Eid's

No. 08-2081
Eid v. Saint-Gobain Abrasives, Inc.

request to provide the jury with full transcripts of the witnesses' testimony. Because we conclude that the district court did not commit reversible error, we affirm the verdict in favor of Saint-Gobain.

**I**

Eid is an Arab-American of Lebanese descent. He began working for Saint-Gobain in November 1981, and by the mid-1990's rose to the level of senior account manager in Saint-Gobain's sales department. Prior to 2002, Eid consistently received positive performance reviews.

This changed in 2002, when Eid began to receive low performance ratings. Eid received such ratings for the years 2002, 2003, and 2004. Finally, in February 2005, Saint-Gobain decided to place Eid on a Performance Improvement Plan (PIP).

Upon learning that he had received a low performance rating for 2004 and that he was being placed on a PIP, Eid raised allegations that his manager, Pat Parker,[1] had harassed him and made discriminatory comments regarding his ethnicity. Parker denied engaging in such conduct. Over the next seven months, Eid reiterated his complaints about Parker, while Parker and Kip Paterson, Saint-Gobain's HR director, both expressed concern about Eid's failure to satisfy the PIP. During this period, Eid's working relationship with Parker became increasingly "poor and uncooperative." Finally, on September 6, 2005, Saint-Gobain terminated Eid's employment. At the time of his firing, Saint-Gobain informed Eid that he was being terminated for failure to satisfy the requirements of the PIP.

---

[1]Parker became Eid's manager in early 2004.

- 2 -

No. 08-2081
Eid v. Saint-Gobain Abrasives, Inc.

After his termination, Eid retained counsel for the purpose of asserting an employment discrimination claim against Saint-Gobain. Prior to filing a claim, Eid's attorney, Gerald Wahl, sent a letter ("the Wahl letter") to Saint-Gobain. This letter announced Eid's intention to pursue a claim against Saint-Gobain, but added:

> Although we intend to pursue Mr. Eid's remedies in court, it has been my experience these claims can be resolved amicably before resort to litigation. As a consequence, I request that you or a representative of your company, contact the undersigned within the next ten business days in order to attempt a resolution.

On December 9, 2005, Sherry Carr, associate general counsel of Saint-Gobain, sent a letter ("the Carr letter") to Wahl responding to his request. The letter discussed Saint-Gobain's internal investigation into Eid's allegations, which included interviews with Parker and witnesses identified by Eid. After reviewing the results of the investigation, the letter concluded that Eid's "termination was handled in our judgment in an appropriate fashion," and "[t]here is no basis for the organization to consider a settlement with your client."

On December 20, 2005, Eid filed a charge with the EEOC alleging discrimination and retaliation. Eid received a right-to-sue letter and, on May 26, 2006, filed a complaint against Saint-Gobain in the United States District Court for the Eastern District of Michigan. The complaint alleged that Saint-Gobain terminated Eid on the basis of his race, ethnicity, or national origin, and in retaliation for his complaints regarding discrimination, in violation of 42 U.S.C. § 1981, Title VII, and the Michigan Elliott-Larsen Civil Rights Act.

No. 08-2081
Eid v. Saint-Gobain Abrasives, Inc.

Prior to trial, Saint-Gobain filed a motion in limine to exclude the Carr letter, arguing that, as a settlement communication, it was inadmissible under Federal Rule of Evidence 408. The district court agreed and granted Saint-Gobain's motion in limine.

The court held a jury trial that lasted eleven days. The jury commenced deliberating late on the afternoon of June 25, 2008. At 2:30 the following afternoon, the jury sent the judge a note indicating that "the jurors after thorough discussions feel that we are at a stalemate as to the outcome of this trial. Looking for a possible solution to this dilemma[!] Any advice would be helpful." In response, the court called the jury in, admonished them to examine all two hundred exhibits before them, and asked them to "return to the jury room and continue your deliberations."

At 10:30 the next morning, the jury sent the judge another note. This note asked "if it would be possible to view . . . the court transcripts of testimony given by [Jeffrey] Clark and [Daniel] VanHamlin [, two of Eid's coworkers at Saint-Gobain,] regarding statements they made in reference to [']dethroning['] Parker." Eid immediately raised two objections to this request. First, he asserted that only one witness used the term "dethroning." Second, he objected "to just simple statements being read back as opposed to the entire transcript," because the simple statements "would be taken out of context." The court indicated that it agreed with the second objection, but declined to read the entire transcript back. Instead, the court decided to "start with a page before these remarks are made and go to a page after the remarks are made." The court then ordered a brief recess for the parties to review the relevant portions of the transcript.

- 4 -

No. 08-2081
Eid v. Saint-Gobain Abrasives, Inc.

After the recess, Eid raised an objection to the manner of the re-read, "because so much is dependent on witness demeanor." To address this concern, the judge decided to have one of his law clerks stand in for the witnesses, and he instructed his law clerk not to look at the jury.

The court then called in the jury and had the relevant portions of Clark's and VanHamlin's testimony re-read to them. In this testimony, both witnesses indicated that Eid had approached them and asked if they would like to work together to remove Parker from his position. After the jury heard the testimony, the court instructed them to return to the jury room and continue their deliberations.

Once the jury left the room, the court asked the attorneys if there was anything they wished to place on the record. Eid reiterated his objection that only one witness used the term "dethrone."

At 2:30 pm the same day, the jury returned a verdict in favor of Saint-Gobain. Eid filed a timely appeal.

**II**

**A**

On appeal, Eid first challenges the district court's failure to issue a cautionary instruction to the jury regarding the proper use Clark's and VanHamlin's re-read testimony.[2] Initially, we note that Eid failed to preserve this issue for review. Federal Rule of Civil Procedure 51 governs "jury

---

[2]The type of instruction to which Eid refers appears in the Sixth Circuit's pattern criminal jury instructions: "Keep in mind that you should consider this testimony together with all the other evidence. Do not consider it by itself, out of context. Consider the evidence together as a whole." Comm. on Pattern Criminal Jury Instructions, District Judges Association, Sixth Circuit, *Pattern Criminal Jury Instructions* 9.02(2) (rev. 2008).

- 5 -

instructions" delivered after the close of evidence. *See* Fed. R. Civ. P. 51(a). This court has previously indicated that the "supplemental instructions given to a jury" after it has begun deliberating fall within the ambit of Rule 51. *Anchor v. O'Toole*, 94 F.3d 1014, 1020 (6th Cir. 1996). The type of cautionary instruction under review here is one such "supplemental instruction."[3] *Cf.* Comm. on Pattern Criminal Jury Instructions, District Judges Association, Sixth Circuit, *Pattern Criminal Jury Instructions* 9.02 (rev. 2008) (classifying the type of cautionary in question here as a supplemental instruction).

Under Rule 51, to preserve a claim of error for appellate review, a party must either object "to an error in an instruction actually given" or both request an instruction and object to the "failure to give [the] instruction." Fed. R. Civ. P. 51(d)(1). This circuit generally requires formal requests and objections, with a narrow exception arising "only when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of the party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission." *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir. 1992).

In this case, Eid did not request a cautionary instruction or object to the instructions issued to the jury. Nor is it plainly evident from the discussion between the parties and the judge that the

---

[3]Eid directs the court's attention to the 2003 Advisory Committee Notes to Rule 51, which provide that Rule 51 does not apply to "cautionary or limiting instructions delivered in immediate response to events at trial." This passage, however, provides no guidance on the type of cautionary instruction under review here, which is not "delivered in immediate response to events at trial." Rather, the type of instruction in question here is delivered only after the court has consulted with the parties regarding the propriety of a re-read, giving the parties ample opportunity to request a cautionary instruction.

judge recognized Eid's desire for such an instruction. Eid raised only one objection that focused on the potential misuse of Clark's and VanHamlin's re-read testimony–*i.e.*, that it would be "taken out of context"–and the district court addressed that objection by expanding the scope of the re-read to include a page before and a page after the relevant statements. Eid did not object to that solution, nor did he mention any further concerns regarding misuse of the re-read testimony. Based on this conduct, the district court's "reasonable conclusion would have been that [Eid was] satisfied with the instruction ultimately given. It was not made aware that an objection remained." *Dahlberg*, 954 F.2d at 1236. As a result, Eid failed to preserve his claim of error for appeal.

Because Eid failed to preserve his claim of error for appeal, this court's review is discretionary, and only for plain error that affected Eid's substantial rights. Fed. R. Civ. P. 51(d)(2). A plain error is "an obvious and prejudicial error that requires action by the reviewing court in the interests of justice." *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999) (internal quotation marks omitted). Such an error impinges upon the appellant's substantial rights only if it "affect[s] the outcome of the district court proceedings." *Alsobrook v. UPS Ground Freight, Inc.*, 352 F. App'x 1, 3 (6th Cir. 2009) (quoting *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009)). Plain error is a "very high standard," *Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007), and the appellant bears the burden of establishing plain error, *Alsobrook*, 352 F. App'x at 3.

Eid has not established that the district court's failure to issue a cautionary instruction constituted plain error. Eid relies on *United States v. Rodgers*, 109 F.3d 1138 (6th Cir. 1997), to support his contention that the district court committed error. In *Rodgers*, this court held that "if a district court chooses to give a deliberating jury transcribed testimony, or chooses to re-read

testimony to a deliberating jury, the district court must give an instruction cautioning the jury on the proper use of that testimony." *Id.* at 1145; *see also United States v. Smith*, 419 F.3d 521, 528-30 (6th Cir. 2005) (applying the *Rodgers* rule). *Rodgers*, however, arose in the criminal context, and the *Rogers* court relied entirely upon criminal case law for the proposition that a cautionary instruction is appropriate. *See* 109 F.3d at 1143-45 & n.3. Although this circuit has suggested that re-reads entail similar "inherent dangers" in both criminal and civil cases, *see Tschira v. Willingham*, 135 F.3d 1077, 1089 (6th Cir. 1998) (citing *United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986)), no decision has extended the *Rodgers* rule to the civil context. Thus, at present, it is not clear if the *Rodgers* rule applies in civil cases. We find it unnecessary to resolve that issue here, because, given the present state of the law, any error the district court committed was not obvious or plain.

**B**

Eid next argues that the district court committed error when it declined to provide the jury with full transcripts of Clark's and VanHamlin's testimony. In general, the decision to allow a deliberating jury to review testimony "is one that lies almost exclusively in the good judgment of the judge presiding." *Moran v. Johns-Manville Sales Corp.*, 691 F.2d 811, 817 (6th Cir. 1982) (internal quotation marks omitted). In exercising this discretion, the district court must take into account several considerations, including the two inherent dangers that attend a re-read: (1) the jury may accord undue emphasis to such testimony; and (2) the jury may take the testimony out of context. *Tschira*, 135 F.3d at 1089; *see also Padin*, 787 F.2d at 1076-77. These inherent dangers are elevated when the jury "has reported its inability to agree upon a verdict," so the trial judge must then "exercise extreme care . . . in permitting any evidence to be restated or re-read to the jurors." *Henry*

*v. United States*, 204 F.2d 817, 819 (6th Cir. 1953); *see also Padin*, 787 F.2d at 1077 (discussing

*Henry*). Yet even when the jury has reported deadlock, the trial judge has a "superior ability to

determine whether the beneficial effects from allowing the jury to review part of the transcript

outweigh the risk that the jury will give undue weight to that part of the evidence." *United States v.*

*Willis*, 986 F.2d 1423, 1993 WL 30488, at *1 (6th Cir. Feb. 9, 1993) (internal quotation marks

omitted). As a result, we review the district court's decision to allow a re-read only for an abuse of

discretion. *See Tschira*, 135 F.3d at 1089; *Rogers*, 109 F.3d at 1142.

Relying on *United States v. Henry*, Eid argues that "[g]iven the inherent danger of a 're-read'

[after the jury had reported potential stalemate], it is likely that 'extreme care' at least require[d] that

the jury receive a full transcript of the [requested] testimony." Appellant's Brief at 23.

Consequently, in Eid's view, the district court abused its discretion when it failed to provide the jury

with full transcripts of Clark's and VanHamlin's testimony.

We disagree. The district court addressed a request to review specific portions of Clark's and

VanHamlin's testimony. Normally, a district court may properly respond to such a request with

"specific and limited excerpts of [a witness's] testimony." *Padin*, 787 F.2d at 1077. Although such

a response may be less appropriate when the jury has reported potential deadlock, in this case there

were two circumstances that mitigated the danger that the jury would misuse the testimony. First,

the trial court had previously supplied the jury with copies of the two hundred exhibits presented at

trial. This provided additional context and reduced the likelihood that the jury would place undue

emphasis on the re-read testimony. Second, over three hours passed between the initial report of

potential stalemate and the request for testimony, suggesting that the jury made progress in its

No. 08-2081
Eid v. Saint-Gobain Abrasives, Inc.

deliberations prior to requesting Clark's and VanHamlin's testimony. *Compare with Henry*, 204 F.2d at 819-21 (emphasizing the need for caution where the jury requested a re-read immediately after declaring deadlock). Additionally, we note that unlike in *Henry*, the testimony re-read to the jury did not include any negative comments by the district judge that could influence the jury's conclusions. *See id.* at 820-21 ("It would seem quite likely that the emphasis thereby placed upon the judge's comment[] [that he suspected that the defendant's witness was lying] could have been the controlling factor in bringing about the agreement of the jury . . . ."). In light of these circumstances, the district court's decision to allow the jury to review only limited portions of Clark's and VanHamlin's testimony was not an abuse of discretion.[4]

**III**

In his final claim, Eid faults the district court for excluding the Carr letter under Federal Rule of Evidence 408. Rule 408 prohibits any party from offering, for certain purposes,[5] two types of evidence. First, it bars parties from admitting evidence of offers to settle–that is, evidence of "furnishing or offering or promising to furnish–or accepting or offering or promising to accept–a valuable consideration in compromising or attempting to compromise a claim." Fed. R. Evid.

---

[4]We also note that the full transcripts of Clark's and VanHamlin's testimony together were nearly seventy pages long, so a complete re-read of the transcripts would have been quite time-consuming.

[5]Specifically, "to prove liability for, invalidity of, or the amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Ev. 408(a).

408(a)(1). Second, it prohibits parties from admitting evidence of "conduct or statements made in compromise negotiations regarding the claim." Fed. R. Evid. 408(a)(2).

Rule 408 serves three purposes. First, the rule promotes the "resolution of disputes short of litigation, thereby conserving scarce judicial resources. The rule recognizes that settlements are more likely to result when parties are free to speak openly during settlement negotiations, without fear that what is said can be used against them at trial." *Korn, Womack, Stern & Assocs. v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 264263, at *6 (6th Cir. June 15, 1994). Second, the rule seeks to exclude irrelevant evidence, recognizing that "disputes are often settled for reasons having nothing to do with the merits of a claim." *Ibid*. Third, the rule attempts to exclude unreliable evidence, as settlement negotiations "are typically punctuated with numerous instances of puffing and posturing," and "[w]hat is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise contend to be wholly true." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir. 2003) (quoting *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990)). We review a district court's decision to exclude evidence under Rule 408 for an abuse of discretion. *Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 797 (6th Cir. 2007).

Eid offers three separate grounds for finding that the district court abused its discretion when it excluded the Carr letter. First, Eid argues that the Carr letter was not part of a compromise negotiation because the letter itself expressed Saint-Gobain's refusal to negotiate. Appellant's Brief at 27. Next, Eid contends that the letter's discussion of Saint-Gobain's internal investigation fell

outside the scope of Rule 408 because it contained distinct admissions of fact. *Id.* at 27-28. Finally, Eid asserts that he sought to use the letter for a permissible purpose: to impeach Parker. *Id.* at 28.

We find no merit in Eid's arguments. The Wahl letter invited Saint-Gobain to engage in settlement negotiations. The Carr letter responded with Saint-Gobain's settlement position: Saint-Gobain saw no basis for settlement because its internal investigation revealed no evidence that discrimination influenced Eid's termination. Contrary to Eid's assertions, this hardline position did not remove the Carr letter from the scope of Rule 408. A party will often adopt a hardline position at the beginning of negotiations in order to extract greater concessions from an opponent. It would ignore the realities of negotiation to hold that such a position necessarily means that the parties are not engaged in compromise negotiations. Such a rule would also run contrary to the purposes of Rule 408, as it would invite undue caution in settlement negotiations, and would facilitate the admission of communications that contain puffing, posturing, and various irrelevancies.

Nor did the Carr letter's discussion of Saint-Gobain's internal investigation fall outside the scope of Rule 408 merely because it contained factual admissions. Eid relies on case law that arose before the adoption of Rule 408 for the proposition that "[w]hile facts assumed to be true for the purpose of compromise are ordinarily not competent as admissions against interest, a distinct admission of fact will not be summarily excluded simply because it was made in connection with an effort to compromise." *Nau v. Comm'r of Internal Revenue*, 261 F.2d 362, 364-65 (6th Cir. 1958) (quoting *Cooper v. Brown*, 126 F.3d 874, 878 (3d Cir. 1942)). However, Rule 408 specifically rejects this approach, and instead adopts a rule excluding factual admissions made in the course of settlement negotiations. *See* Fed. R. Evid. 408 advisory comm. notes (1972). The Carr letter's

discussion of Saint-Gobain's internal investigation, provided to explain Saint-Gobain's settlement position, is exactly the type of admission that falls within the scope of Rule 408.

Finally, Eid did not offer the Carr letter for a permissible purpose. The plain text of Rule 408 precludes the use of settlement communications "to impeach through prior inconsistent statement or contradiction."[6] Fed. R. Evid. 408(a). This is precisely the purpose for which Eid sought to offer the evidence. *See* Appellant's Brief at 28.

The district court thus did not abuse its discretion when it excluded the Carr letter under Rule 408.

## IV

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[6]Eid appears to quote an older version of Rule 408 that did not include this language, but the present version of Rule 408 came into effect well before Saint-Gobain filed its motion in limine. Additionally, this court recognized that impeachment through contradiction was not a proper use of Rule 408 evidence even before the present version of Rule 408 came into effect. *See Goodyear Tire & Rubber Co.*, 332 F.3d at 982-83.