IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 6, 2021

**ANTHONY JACKSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 12-05596    Lee V. Coffee, Judge

_____

**No. W2020-00417-CCA-R3-PC**

_____

A Shelby County jury convicted the Petitioner, Anthony Jackson, of attempted voluntary manslaughter, employing a firearm with intent to commit a felony, and being a felon in possession of a firearm. The trial court sentenced the Petitioner to an effective sentence of forty-two years. This court affirmed his convictions and sentence on appeal. *State v. Anthony Jackson*, No. W2015-01403-CCA-R3-CD, 2016 WL 4147419 (Tenn. Crim. App., at Jackson, Aug. 2, 2016), *no perm. app. filed*. The Petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied the petition. Upon review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and ROBERT L. HOLLOWAY, JR., J., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Anthony Jackson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Petitioner's shooting the victim in the leg outside of a store and pursuing the victim inside the store and firing two additional shots at him. A Shelby County grand jury indicted the Petitioner for attempted first-degree murder, employing a

firearm with intent to commit a felony, and being a felon in possession of a firearm. In our opinion on direct appeal, we summarized the facts presented at trial as follows:

On the afternoon of June 5, 2012, the victim, Eronia Neal, was standing outside DJ's Grocery with a friend, known to the victim as "Black." According to the victim, the [Petitioner], who the victim only knew by his nickname -- "Amp," approached them and the two began to argue with Black about a debt he allegedly owed the [Petitioner]. While the discussion was heated, it ended without incident. The victim testified that he was not a part of the argument between the [Petitioner] and Black and had no knowledge of the debt Black owed the [Petitioner]. While the victim was familiar with the [Petitioner] from around the neighborhood, he testified that he never had a problem with the [Petitioner].

Later that evening, the victim was still outside of DJ's Grocery when the [Petitioner] approached him and started arguing with the victim about Black's debt. As it did earlier in that day, the discussion became heated. In response, the victim told the [Petitioner] "Whatever y'all got going on, I don't have nothing to do with it. Just, you ain't going to sit up here and talk crazy to me." After the victim made these statements, the [Petitioner] left the store front and walked to his car.

Within moments, the [Petitioner] returned to the store. As he approached, the victim heard one of the [Petitioner]'s friends say, "You ain't got to do that." The [Petitioner] then approached the victim, produced a gun from under his shirt, and shot the victim in the leg. After the first shot, the victim fled into the store hoping to escape through the backdoor. However, the [Petitioner] pursued him announcing his intent to collect Black's debt from the victim and his intent to kill the victim. According to the victim, the [Petitioner] fired at least two more shots once they were inside the store. Finally, at the urging of his friends, the [Petitioner] fled the location.

Memphis Police Officer Dominique McCraven testified that she was involved in the investigation of the shooting at DJ's Grocery. Officer McCraven was dispatched to the hospital to interview the victim. During the interview, the victim told Officer McCraven that the [Petitioner] shot him in the leg after asking him about Black. Then, as the victim fled into the store, the [Petitioner] pursued him firing at least two more shots.

Officer Milton Gonzalez with the Memphis Police Department's Project Safe Neighborhoods Unit testified that he was tasked with trying to identify and locate the [Petitioner]. According to Officer Gonzalez, the victim had described the [Petitioner] as an "older male black between forty and fifty, street name of Amp." From another source, Officer Gonzalez also learned that the perpetrator's last name was Jackson. Though he was unable to find anyone with the street name Amp in the police database, Officer Gonzalez did determine that the [Petitioner], who was in the database as Anthony Jackson, matched the description provided by the victim.

Officer Gonzalez provided the [Petitioner]'s name to Officer Jonathon Clapp who, in turn, prepared a photospread containing the [Petitioner]'s picture and five other similar looking individuals. When Officer Clapp showed the photospread to the victim, he identified the [Petitioner] stating, "This is Amp, who shot me in the leg."

In addition to the live testimony, the State also introduced a video recording of the incident that was captured by the store[']s security camera.

*Jackson*, 2016 WL 4147419, at *1-2. This court affirmed the Petitioner's convictions and sentence. *Id*. at *1.

The Petitioner filed a *pro se* petition for post-conviction relief that appointed counsel later amended. In it, as relevant to this appeal, the Petitioner contended that his trial counsel ("Counsel") was ineffective for not objecting when, during jury deliberations, the jury asked the Petitioner to stand up and walk around the courtroom.

The parties presented the following evidence at the hearing on the post-conviction petition: Counsel testified that he had been practicing law for twenty-one years at the time of the Petitioner's trial in 2015. At the time of the post-conviction hearing, he had conducted approximately sixty-five jury trials. Counsel testified that his trial strategy initially was to raise reasonable doubt that the person in the surveillance videos of the shooting was the Petitioner. However, Counsel asserted that one of the videos had "the most perfect capturing of [the Petitioner's] face that it could be[.]" Counsel agreed that demonstrative evidence, such as having a defendant stand during trial, usually happened before both sides rested and before the case was given to the jury. He further agreed that he did not object in this case when the Petitioner stood and walked around in front of the jury in response to the following request from a juror after the proof was closed: "[C]an we . . . ask the [Petitioner] to get up and walk[?] The person in the video is pigeon-toe[d], and I want to verify[.]"

- 3 -

On cross-examination, Counsel testified that he raised the issue of identification in his closing argument. He focused on one surveillance video from a distant angle outside of the store. Counsel noted that the person in the video appeared to be limping or bowlegged, and could not be identified. He said that the person in the video appeared to be younger and to have a different gait than the Petitioner. Counsel testified that he did not object to the juror's request to see the Petitioner walk around the courtroom. He thought the request meant that the jury was focused on the identity issue that Counsel raised during closing arguments. Counsel further testified:

> Again, in hindsight, maybe if I had thought about case law and the close of proof, it would have been a different judgment, but, in my mind, it was something they were questioning, and I thought it would weigh favorably for us.

Counsel noted that the jury returned a verdict for a lesser charge, and the Petitioner avoided a "three strikes class sentence," which could have resulted in a sentence of life without the possibility of parole.

The Petitioner testified that he was not the shooter in the surveillance videos. He asserted that he should not have been required to walk around the courtroom in the front of the jury after deliberations had begun. The Petitioner testified that the person in the surveillance videos appeared to be younger than the Petitioner, and he also walked "pigeon-toed."

On cross-examination, the Petitioner agreed that Counsel argued to the jury that the person in the surveillance videos appeared to be younger than the Petitioner and walked differently than the Petitioner. The Petitioner further agreed that some of the videos showed a close-up of the shooter's face. However, he said none of the videos showed that he was the shooter. The Petitioner acknowledged that he was a career offender with nine prior violent felony convictions and that he qualified for the "three-strikes rule," which meant that he was eligible for a life sentence as charged without the possibility of parole if convicted.

The post-conviction court issued extensive oral findings of fact at the conclusion of the post-conviction hearing, later followed by a written order, in which it denied the petition for post-conviction relief. With respect to the Petitioner's claim raised in this appeal, the post-conviction court noted that it had a mandatory obligation to fully charge the jury and that "when a jury is deliberating and has a question, the Court must answer that question with clarity and with swiftness and with precision." The post-conviction court further said that Counsel had no reason to object to the jury's question and that it would be "absolute error" for the post-conviction court not to answer a question that the jury had during deliberations, that was capable of being answered, which did not unfairly

- 4 -

prejudice either side. Additionally, the post-conviction court found that having the Petitioner walk around the courtroom was not testimonial, did not violate his right against self-incrimination or his right not to be subjected to unreasonable searches and seizures, and it was not prejudicial to him. The post-conviction court concluded that there was "absolutely nothing on this record nothing in [the Petitioner's] testimony, that would indicate that [Counsel] was, in fact, deficient." It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner alleges that Counsel provided ineffective assistance because he failed to object to a juror's request that he walk around the courtroom in front of the jury after deliberations had begun. The State counters that the post-conviction court did not err when it denied the Petitioner's petition. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely *de novo* review by this court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings,

it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In this case, we conclude that the post-conviction court did not err by determining that Counsel provided effective assistance of counsel, albeit for different reasons. Counsel testified that he did not object to the juror's request to see the Petitioner walk around the courtroom after deliberations had begun because he thought the request meant that the jury was focused on the issue of identification that he had raised at trial and during closing argument. Counsel judged that the juror's request would weigh favorably for the Petitioner. Counsel clearly made a tactical and strategic decision not to object to the request. Strategic or tactical decisions are given deference on appeal if the choices are informed and based upon adequate preparation. *See Goad*, 938 S.W.2d at 369; *see also Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *see also State v. Jenkins*, 845 S.W.2d 787, 792 (Tenn. Crim. App. 1992) (citing *Henry v. United States*, 204 F.2d 817, 820 (6th Cir.1953) for the proposition that "[t]here is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations.") This approach appears to have been successful because the Petitioner was convicted of attempted voluntary manslaughter rather than attempted first degree murder, and he avoided a potential sentence of life without the possibility of parole as a repeat violent offender under the three strikes law. T.C.A. § 40-35-120 (i) (2) (2019).

Even if Counsel should have objected to the juror's request, the Petitioner has failed to show that the outcome of his trial would have been any different. The Petitioner relies on *State v. Lavelle Moore*, No. W2016-00094-CCA-R3-CD, 2017 WL 2820105 (Tenn. Crim. App., at Jackson, June 29, 2017), *no perm app. filed*, in support of his argument that Counsel should have objected to the juror's request to see him walk around the courtroom during deliberations. In *Moore*, a panel of this Court found that it was error for the trial court to allow the jury to view the defendant's eyes after the close of proof and during deliberations. *Id*. at *9. This Court further found that "[b]y allowing the jury to view the defendant's eyes in close proximity for the first time after the submission of the case to the jury, the trial court violated the defendant's fundamental right to a fair trial." *Id*. at *10. This Court reviewed the error as a non-structural constitutional error and concluded that the error was not harmless because the jury was deadlocked shortly before viewing the defendant's eyes. *Id*. In this case, the proof against the Petitioner was overwhelming. The victim knew the Petitioner and identified him as the shooter. Counsel testified at the post-conviction hearing that one of the surveillance videos of the shooting had "the most perfect capturing of [the Petitioner's] face that it could be [.]" The Petitioner is not entitled to relief on this issue.

To the extent the Petitioner argues as a stand-alone claim that his fundamental right to a fair trial was violated by the jury seeing him walk around the courtroom for the first time during deliberations, we agree with the State that this issue is waived. The Petitioner failed to present this issue before a court of competent jurisdiction at trial or on direct appeal. T.C.A. § 40-30-106(g) (2018). Furthermore, the Petitioner has presented this specific issue for the first time on appeal in his post-conviction proceedings. "Issues raised

for the first time on appeal are considered waived." *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996).

### III. Conclusion

Based on the foregoing authorities and reasoning, we conclude that the post-conviction court did not err when it denied the Petitioner's petition for post-conviction relief.


_____
ROBERT W. WEDEMEYER, JUDGE